426

JOHN CONNOR, No. 1726, MYRTLE CONNOR, No. 1727, DELLA CONNOR, No. 1728, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 12, 1935.*

G. A. HICKMAN AND CARL CHOISSER, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

These claims were all filed February 24, 1931, and all arise from the same state of facts which all occurred at the same time. Number 1726 is the claim of John Connor. The claimant alleges that on the 16th day of September, 1930, in the Village of Ramsey, County of Fayette and State of Illinois, that he was the owner of and lawfully occupying and driving a certain Ford roadster in which he was then riding in a southerly direction on the westerly side of a certain highway in Fayette County, and was in the exercise of all due care and caution for his own safety and for the safety of his property, and avers that the defendant, the State of Illinois, by its servants and agents, to-wit: W. L. Moody and C. E. Caldwell, State patrolmen, were possessed of a certain Hupmobile automobile and were then and there driving in a northerly direction approaching a certain railroad crossing in the Village of Ramsey, which crossing was being held closed by the agents of the Nickle Plate Railway Company in order to permit the safe crossing of one certain engine and train of cars and it is further alleged that it became and was the duty of the agents of the State to obey and abide by the signals of the agent of the railway company to stop until such time as the said engine and train of

cars had passed, but this they failed to do, but carelessly, negligently and improperly refused to use care and caution in this behalf for the safety of plaintiffs and others using the highway, but so negligently, improperly and recklessly managed its car that the same collided with, ran into and against the car in which the plaintiff was driving with great force and violence and overturned the same and the plaintiff was badly injured and suffered severe shock to his nervous system, and the declaration contains other averments concerning the injuries.

Claim No. 1727 is the claim of Myrtle Connor, and No. 1728 is the claim of Della Connor.

In claim No. 1726 damages in the sum of Two Thousand Dollars ($2,000.00) are asked; in claim No. 1727 damages in the sum of Thirteen Hundred Dollars ($1,300.00) and in claim No. 1728 the same amount.

From the testimony of John Connor, the claimant in No. 1726, it appears that in the Ford coupe at the time of the accident was his wife, Myrtle Connor, and Della Connor and Frank Cockrum, together with plaintiff, four of them being in a Ford coupe; that at about eleven o'clock at night he started to turn off to the left; that he was run into by a car and the front wheels of the car were off the pavement at the time the other car struck him. The road upon which both cars were driving ran north and south through Ramsey.

It appears from the evidence that a railroad track crosses the State highway at right angles. Claimant had turned off at the left on the easterly side of the highway, north of the railroad and John Connor testified that a train was standing across the hard road and a flagman was there to stop traffic. The car that struck him came from the south. Connor testified that the flagman attempted to stop this car but was not successful. It came right on, ran into his car. Connor's testimony must be in error because if the train was standing across the State highway, the car that struck Connor could not have crossed the railroad. This north bound car was driven by Walter Moody, who with another patrolman, were in uniform and driving a Hupmobile car that was privately owned. The testimony of Connor is largely his conclusions of facts. He testified that he was using due care and caution with reference

to his driving; that the collision tore his car all to pieces and crippled his wife and the other woman. On direct examination he stated that his car was worth Three Hundred Dollars before it was struck; that afterwards it was sold for Three Dollars for junk.

In our view of the case it will be unnecessary to go into the various injuries received by these parties. On cross examination Connor stated that his car was a 1925 model Ford; that he had purchased it second hand for Fifty Dollars or Seventy-five Dollars in the Spring of 1930; that he had put new equipment on it such as piston rings and rods and new tires. The accident occurred on September 26, 1930.

On cross examination he stated that the accident occurred about eleven o'clock and we assume this was p. m.; that he had plenty of room to drive up and stop off of the hard road; that the brakeman was on the hard road apparently about to couple-up a train; that he had seen the lights of the other car as Connor drove up to the track.

Myrtle Connor testified that she was the wife of John Connor and had been knocked out of the car. She had been sitting on the right hand side; she did not see the car coming before she was struck; she saw the train and the brakeman and the car was coming fast, "maybe 60 or 70 miles an hour." On cross examination she said her husband had driven the car over to the left hand side of the pavement directly in the line of traffic coming south.

Della Connor, another witness, testified that she was in the car at the time and had been thrown out and did not know anything else until she came to in the doctor's office. She testified that she did not see the car until she was struck. She also testified that the brakeman was "right at the road with a lantern waving it."

Frank Cockrum testified that he was a teamster and was riding in the car at the time of the collision. He said he saw a light coming up the road and they were hit by a car, and that this car was coming pretty fast. He was knocked unconscious.

Walter Moody testified that he was superintendent of the State patrol of Illinois; that he was in the vicinity of Ramsey at about eleven o'clock in a privately owned Hupmobile and had been driving about fifty miles an hour; that he came up to the crossing and slowed down; that he turned off of the

hard road and was hit by this other car; that there was a flag-man on the back end of a car that was west of the crossing on the railroad track. He testified that he had to turn to the right to avoid striking the other car and when the collision occurred he was four and one-half feet off the pavement; that after the accident he was sixty-five feet beyond the place where it occurred and on the other pavement, apparently meaning on the other side of the road. Moody's car was never on the left hand side of the road until after the accident.

On cross examination he testified that the brakeman at the crossing was 60 or 70 feet from the hard road and that at the time of the accident, he was driving about 25 miles an hour.

Substantially to the same effect was the testimony of witness Caldwell. Moody was recalled and stated that he was 40 feet away from the Ford car when he saw it turn to the left, and that he attempted to avoid it.

It is very apparent that the testimony of the owner of the car is in error when he says that a railroad train obstructed the highway because it appears that the car driven by the highway patrolman was driven across the railroad track on the highway. We are not surprised that some of the inmates of the Ford car did not see the Hupmobile being driven toward them. When there are four people riding in a Ford coupe each of them would be greatly crowded and not in a very good position to see.

The declaration avers that it was the duty of the agents of the State to stop their automobile ''in order to permit the safe crossing of one certain engine and train of cars, and there became and was the duty of the State of Illinois to obey and abide by the signals of the agent of the said railroad company to stop until such time as the said engine and train of cars had passed.''

Without further comment upon this alleged duty, certain it is that before one may recover from another on the grounds of negligence he must show that such other person owed him a duty, failed to perform that duty, and the resulting damages.

The alleged duty complained of here was a duty that was owed to the railroad company. It does appear, however, that some of the occupants in the Ford coupe did suffer painful and severe injuries, but because the doctrine of *respondeat su-*

*perior* does not apply in the State of Illinois, even though there had been negligence on behalf of agents of the State, there could be no recovery.

After a consideration of all the evidence we hold that as a matter of law in all three cases there was contributory negligence.

Without unduly extending this opinion, we hold that there is no liability on behalf of the State in each of these cases. Cases dismissed.